UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| REBECCA J. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-CV-203-DCP |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 16].

Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in

Support [Docs. 12 & 13] and Defendant's Motion for Summary Judgment and Memorandum in

Support [Docs. 14 & 15]. Rebecca J. Taylor ("Plaintiff") seeks judicial review of the decision of

the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the

Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and

**GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On June 26, 2016, Plaintiff protectively filed an application for disability insurance benefits

pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., claiming a period of

disability that began on April 11, 2016. [Tr. 12, 132–41]. After her application was denied initially

and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 89–90]. A hearing

was held on September 19, 2018. [Tr. 30–49]. On November 13, 2018, the ALJ found that

Plaintiff was not disabled. [Tr. 9–29]. The Appeals Council denied Plaintiff's request for review

on September 12, 2019 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on November 13, 2019, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.  ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since April 11, 2016, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: valvular aortic stenosis status post valve replacement; coronary artery disease status post coronary artery bypass grafting; venous insufficiency; diabetes; and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to the following: stand/walk for four hours; sit for six hours; occasional postural except no ropes, ladders, or scaffolds; and avoid concentrated exposure to extreme heat and cold, wetness, and hazards.

6. The claimant is capable of performing past relevant work as a teacher. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

2

> 7. The claimant has not been under a disability, as defined in the Social Security Act, from April 11, 2016, through the date of this decision (20 CFR 404.1520(f)).

[Tr. 14–23].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial

3

evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

4

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence,

5

as she challenges the ALJ's rejection of the opinions of her treating physician, Amy Proffitt, M.D., as well as the opinion of consultative examiner, Robert Blaine, M.D. Additionally, Plaintiff contends that the ALJ's credibility assessment is deficient because of his failure to appropriately consider the medical opinions of record, as well as his failure to appropriately acknowledge Plaintiff's work history. The Court will examine Plaintiff's allegations of error in turn.

### A. ALJ's Treatment of Medical Opinions

Plaintiff reviews Dr. Proffitt and Dr. Blaine's opinions and first claims that they establish greater limitations than those set forth in the ALJ's RFC determination and are consistent with a finding that Plaintiff is disabled under the applicable regulations. [Doc. 13 at 4–9]. However, Plaintiff asserts that the ALJ failed to provide sufficient reasons for rejecting the opinions of her treating provider and an examining source and that the ALJ erred by accepting the opinions of the nonexamining state agency physicians. [*Id.* at 9–18]. Plaintiff contends that Dr. Blaine and Dr. Proffitt's opinions are more consistent with an ability to perform sedentary work, and that she is entitled to a finding of disability if she is limited to sedentary work. [*Id.* at 8].

The Commissioner responds that the ALJ properly provided good reasons for the weight he afforded each medical opinion, as well as that the ALJ detailed how Dr. Proffitt's opinions were not supported by medically acceptable clinical signs and diagnostic techniques and were inconsistent with other evidence in the medical record. [Doc. 15 at 8–11]. Additionally, the Commissioner asserts that the ALJ reviewed how Dr. Blaine's opinion was not supported by the medical record, and therefore he appropriately accepted the opinions of the nonexamining state agency consultants. [*Id.* at 12–15].

### 1. Medical Opinions

After becoming symptomatic of severe aortic stenosis, Plaintiff underwent an aortic valve

6

replacement on May 10, 2016. [Tr. 319]. On November 4, 2016, her primary care physician, Dr. Proffitt, completed an Attending Physician's Statement, with diagnoses of her status post aortic valve replacement, insulin-dependent diabetes mellitus, chronic knee and leg pain, coronary artery disease, and venous insufficiency. [Tr. 604–05; 747–48]. Dr. Proffitt noted Plaintiff's current symptoms of fluctuating uncontrolled sugars, chronic leg pain and swelling, and shortness of breath. [Tr. 604; 747]. Further, Dr. Proffitt opined that Plaintiff was disabled as of May 2016 and noted that she sees Plaintiff every three to four months; that Plaintiff could not walk, stand, or talk for more than five minutes or sit for more than twenty to thirty minutes; and that prior to her operation, Plaintiff had marked limitations in her cardiac functional capacity. [*Id.*]. Dr. Proffitt also found that Plaintiff could perform zero hours of even sedentary activity in an eight-hour workday. [Tr. 605; 748]. Dr. Proffitt indicated that she did not expect any significant improvement in the future, and that Plaintiff's recovery "is limited by the several issues she has and nearly every job is limited by some aspect of her medical issues." [*Id.*]. [1]

The Commissioner also notes an undated letter from Dr. Proffitt wherein she listed Plaintiff's diagnoses of "diabetes, aortic stenosis requiring aortic valve replacement, chronic knee pain and leg pain, as well as coronary artery disease and venous insufficiency," explaining that Plaintiff "has chronic lower extremity pain as well as the venous insufficiency from a prior CABG; the lower extremity edema worsens the lower extremity pain" and that "[t]he swelling is present especially when on her legs and also even when seated and not able to elevate her lower extremities

---

[1] Plaintiff asserts that "Dr. Proffitt completed another Treating Source Statement on November 11, 2016 . . . and opined she could not perform all of the duties of her regular occupation, and does not expect to return to that occupation." [Doc. 13 at 5]. However, upon the Court's review, this "Supplementary Proof of Loss–Claimant's Statement" is signed by Plaintiff, *see* [Tr. 602–03], and followed by the Attending Physician's Statement described above.

throughout the day, and worsens as the day progresses." [Tr. 654, 845]. Dr. Proffitt noted her "office visit notes from March 24, 2016 and May 26, 2016 that reference[ ] [Plaintiff's] venous insufficiency and the fact that the swelling makes the pain worse in her lower extremities and that this would be one of the major factors that would make this difficult for [Plaintiff] to return to work." [*Id.*].

Dr. Proffitt completed an additional Attending Physician's Statement, in connection with Plaintiff's long-term disability insurance claim, on April 24, 2017. [Tr. 742–43]. Dr. Proffitt listed diagnoses of venous insufficiency and chronic bilateral lower-extremity pain and noted that Plaintiff's lower extremity edema is worse when standing or sitting for prolonged periods. [Tr. 742]. Additionally, Dr. Proffitt found that Plaintiff was unable to stand or sit for more than thirty minutes at a time, as well as that she required being off her feet, with her feet elevated, at least hourly. [*Id.*]. Dr. Proffitt opined that in an eight-hour workday, Plaintiff could perform sedentary activity for at least two hours, and light activity for at least one hour. [Tr. 743]. Lastly, Dr. Proffitt completed another Attending Physician's Statement on October 31, 2017 and opined identical limitations. [Tr. 740–741].

Dr. Blaine performed a consultative examination on October 18, 2016.[2] [Tr. 597]. On examination, Dr. Blaine assessed that Plaintiff's lungs were clear to auscultation, as she was not dyspneic at rest, but became mildly dyspneic with exertion; that her heart showed a regular rhythm with a grade 4/6 systolic blowing murmur and a loud first heart sound, and that her radial and dorsalis pedis pulses were 2+ bilaterally. [Tr. 599]. Additionally, Dr. Blaine indicated that Plaintiff's cervical spine flexion is 50 degrees, extension is to 50 degrees, lateral rotation is 70

---

[2] Plaintiff's brief incorrectly states that this examination occurred on October 18, 2018. [Doc. 13 at 6].

degrees to either side, and lateral flexion is 35 degrees to either side; that her shoulder abduction was to 150 degrees on the right and 100 degrees on the left, with internal rotation to 80 degrees bilaterally, and external rotation to 85 degrees on the right and 60 degrees on the left.  [*Id.*].  Dr. Blaine indicated that Plaintiff's hip flexion was 90 degrees bilaterally, internal rotation was five degrees bilaterally, external rotation was 50 degrees bilaterally, abduction was 40 degrees bilaterally, and her adduction was 10 degrees bilaterally.  [*Id.*].[3]  Next, Dr. Blaine found that Plaintiff's sensation was intact to light touch in all four extremities and was symmetrical; that her grip strength was 5/5 bilaterally; flexor and extensor strength of both upper and lower extremities was 5/5; her straight leg raise was negative bilaterally; and that she demonstrated normal station, gait, tandem walk, heel and toe walk, and single-leg stand.  [*Id.*].

Therefore, Dr. Blaine diagnosed Type 1 diabetes, aortic stenosis, venous insufficiency in the right leg, chronic bilateral knee pain consistent with degenerative disc disease, breast cancer, hypertension, obstructive sleep apnea, dyspnea probably related to cardiac origin, and morbid obesity.  [Tr. 600].  Dr. Blaine assessed that Plaintiff could stand or walk for three hours in an eight-hour day, limited by dyspnea and knee and leg pain; that she could lift and carry five pounds frequently and twenty-five pounds infrequently; and that she could probably sit for about four hours in an eight-hour day with reasonable rest breaks.  [*Id.*].

Nonexamining state agency physician Celia Gulbenk, M.D., reviewed the evidence of record at the initial level of the agency's review on November 21, 2016, and opined that Plaintiff could occasionally lift and/or carry up to twenty pounds, as well as frequently lift and/or carry up

---

[3] Dr. Blaine also assessed Plaintiff's range of motion relating to her elbows, knees, ankles, and thoracolumbar spine.  [*Id.*].

9

to ten pounds; that she could stand and/or walk, as well as sit, for a total of about six hours in an eight-hour workday; and that she was unlimited in the ability to push and/or pull, with the exception of the opined limitations. [Tr. 60]. Additionally, Dr. Gulbenk assessed that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but that she could never climb ladders, ropes, or scaffolds. [Tr. 60–61]. Kanika Chaudhuri, M.D., examined the evidence of record at the reconsideration level of the agency's review on January 18, 2017 and opined that Plaintiff could perform light work with similar postural limitations, as well as that Plaintiff should avoid concentrated exposure to extreme heat. [Tr. 74–77].

In the disability decision, the ALJ reviewed Dr. Proffitt's November 4, 2016, April 24, 2017, and October 31, 2017 assessments, as well as Dr. Blaine's consultative examination and opinion. [Tr. 20]. However, the ALJ accepted the assessment of the nonexamining state agency physicians "because they are supported by the medical signs and findings are consistent with the medical record." [Tr. 21]. Conversely, the ALJ rejected Dr. Blaine's assessment "because it was not well supported by exam[ination] findings and is inconsistent with the medical record." [*Id.*]. Similarly, the ALJ rejected Dr. Proffitt's assessments "because they are not well supported by medically acceptable clinical signs and diagnostic techniques and are inconsistent with other medical evidence," as well as that they "are inconsistent with the claimant's own testimony at the hearing concerning her functional abilities." [*Id.*]. Immediately following this analysis, the ALJ provided that:

> The claimant's treatment record from her treating specialists reveals that her valvular aortic stenosis and coronary artery disease were improved and stable with treatment. Her treatment record also indicates generally that her edema was improved and that she was not having as much swelling or symptoms from venous insufficiency. The claimant's diabetes and her A1c decreased with compliance with treatment. The evidence does not show that the claimant's diabetes has seriously damaged the claimant's heart, kidneys, or vital organs.

10

[*Id.*].  Additionally, the ALJ accepted the assessments of the nonexamining state agency physicians that Plaintiff did not have a severe mental impairment because they were consistent with the longitudinal medical evidence, as Plaintiff's symptoms of her mental impairments were controlled with the use of prescribed medication.  [*Id.*].  The ALJ detailed that there was no record of specialized mental health treatment or inpatient psychiatric treatment or hospitalization, and that Plaintiff's "records show that she is able to communicate with others, act in her own interest, and perform most ordinary activities."  [*Id.*].

### 2.    Standards for Evaluation of Medical Opinions

With respect to Dr. Proffitt's assessments, under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[4]  When an opinion does not garner controlling weight, the appropriate weight to be given to the opinion will be determined based upon the length of treatment, frequency of examinations, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or

---

[4] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017.  *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017).  The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule.  *Id.* As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies.  *See id.* §§ 404.1527; 416.927.

11

contradict the opinion.  *Id.*

The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight.  *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c).  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability."  *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion."  *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)).  Ultimately, there is no rule that requires an articulation of each of these factors.  *Albaugh v. Comm'r of Soc. Sec.*, No. 14-CV-10963, 2015 WL 1120316, at *6 (E.D. Mich. Mar. 11, 2015).

The ALJ is not required to give "good reasons" for the weight assigned to the opinions of non-treating and examining consultants, as "this requirement only applies to treating sources."  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)).  However, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." 20 C.F.R.

§ 416.927(e)(2)(ii).  Social Security Ruling (SSR) 96–6P provides that, although "[a]dministrative law judges . . . are not bound by findings made by State agency . . . physicians and psychologists . . . they may not ignore these opinions and must explain the weight given to the opinions in their decisions."  1996 WL 374180, at *3 (July 2, 1996).

### 3.  Analysis

In essence, Plaintiff challenges the acceptance of the opinions of the nonexamining state agency physicians over those of Dr. Proffitt and Dr. Blaine—Plaintiff's treating physician and consultative examiner.  Plaintiff asserts that the ALJ failed to provide any "obvious consideration to the regulation that provides the opinions of treating sources are generally entitled to more weight."  [Doc. 13 at 10].  Additionally, Plaintiff challenges the ALJ's acceptance of the nonexamining state agency physicians' opinions over those of Dr. Proffitt and Dr. Blaine.  Plaintiff maintains that the "*complete* rejection of [Dr. Blaine's] opinion is an impermissible substitution of [the ALJ's] opinion for that of Dr. Blaine, a physician the Agency chose to evaluate Plaintiff's limitations."  [*Id.*].  Similarly, Plaintiff contends that the ALJ erred by failing to cite to specific examples of how Dr. Blaine's opinion was inconsistent with the medical record, and only used general statements regarding Plaintiff's improvement when discussing Dr. Proffitt's opinion.  [*Id.* at 11].  Plaintiff then reviews the medical record regarding Plaintiff's edema and venous insufficiency to claim that "the ALJ's assertion represents a highly selective reading of the record, ignoring important pieces of evidence in favor of blanket statements of improvement."  [*Id.*].

First, when reviewing Dr. Proffitt's opinions, the ALJ acknowledged that Dr. Proffitt was Plaintiff's treating doctor at First Choice Internal Medicine.  [Tr. 20].  Therefore, while the ALJ was not required to explain his consideration of each of the factors under the treating physician rule, he acknowledged Dr. Proffitt's treating relationship with Plaintiff.  *See Francis v. Comm'r of*

13

*Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).

Next, the Court does not agree with Plaintiff's statement that the ALJ's analysis of Dr. Proffitt's opinions was limited to two sentences. The ALJ found that Dr. Proffitt's assessments were not well supported by medically acceptable clinical signs and diagnostic techniques and inconsistent with other medical evidence, including Plaintiff's own testimony at the hearing regarding her functional abilities. [Tr. 21]. The Sixth Circuit has directed that "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010). The ALJ met that standard here by summarizing how Plaintiff's treatment records were inconsistent with Dr. Proffitt's opinions, which he also discussed throughout the RFC determination. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285–86 (6th Cir. 2009); *see also Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion."); *Simmons v. Berryhill*, No. 4:17-CV-15-TWP-CHS, 2018 WL 1413179, at *5 (E.D. Tenn. Mar. 21, 2018) ("The ALJ's analysis of a treating physician's opinion may cite inconsistencies in the evidence, but the ALJ need not refer again to specific inconsistencies again when those were listed earlier in the decision.").

Therefore, Plaintiff's argument against the ALJ's treatment of Dr. Proffitt's opinion revolves around whether the ALJ's finding that Dr. Proffitt's opinion was inconsistent with the medical record is supported by substantial evidence. As detailed above, the ALJ reviewed that Dr. Proffitt's opinion was inconsistent with Plaintiff's testimony at the hearing regarding her

14

functional abilities. [Tr. 21]. Earlier in the disability decision, the ALJ noted that postoperative treatment records from Plaintiff's aortic valve replacement "have shown a mechanical aortic valve with normal function," as well as that Plaintiff "was noted to have an exam consistent with normal prosthetic aortic function." [Tr. 19]. Additionally, the ALJ detailed that Plaintiff was "described as well recovered and clinically stable in November 2017," as well as that treatment records from her cardiologist document that she continued to feel well, remained normally active, and could do housework and shopping without significant limitation. [*Id.*].[5] The ALJ also found that Plaintiff's treatment record "from her treating specialists reveals that her valvular aortic stenosis and coronary artery disease were improved and stable with treatment," and, therefore, the intensity, persistence, and limiting effects of her symptoms were not consistent with the degree alleged. [*Id.*].

When reviewing the medical opinions of record, the ALJ summarized the medical record to state that Dr. Proffitt's assessments were inconsistent with Plaintiff's testimony at the hearing regarding her functional abilities, treatment records revealing that her valvular aortic stenosis and coronary artery disease were improved and stable with treatment, that her edema was improved and that she was not having as much swelling or symptoms from her venous insufficiency, and that Plaintiff's diabetes had improved and her A1c decreased with compliance with treatment. [Tr. 21]. Lastly, the ALJ noted that the medical record did not show that Plaintiff's diabetes had seriously damaged her heart, kidneys, or vital organs. [*Id.*].

_____

[5] While the ALJ generally cites to several medical records, a November 22, 2017 treatment note from Dr. Proffitt states that Plaintiff "seemed to be well recovered and was clinically stable" when Dr. Proffitt last saw Plaintiff one year ago, which was approximately four months from her valve replacement. [Tr. 709]. However, the November 22nd treatment note also states that Plaintiff "continues to feel well," that she "remains active and on the go . . . denies any unusual exertional dyspnea, fatigue, [or] chest discomfort," that she did not have any palpitations, syncope, or presyncope, and that she can do housework and shopping usually without significant limitations. [*Id.*].

15

First, with respect to the ALJ's statement that Plaintiff's edema had improved and that she was not having as much swelling or symptoms related to her venous insufficiency, Plaintiff asserts that the ALJ failed to acknowledge her testimony that her foot had swollen or to mention the pictures of her feet submitted with a December 2016 function report showing extreme edema, bruising, and an inability to wear a sandal. [Doc. 13 at 11]. Plaintiff claims that this swelling has resulted in her spending large portions of the day elevating her legs, which was consistent with Dr. Proffitt's opinion.

This Court, like many others, has held "that an ALJ is not required to discuss all of the relevant evidence in the record, nor is he required to comment on every finding in a medical opinion" for the decision to stand. *Dycus v. Astrue*, No. 3:12-CV-78, 2012 WL 4215829, at *7 (E.D. Tenn. Aug. 30, 2012), *report and recommendation adopted by*, 2012 WL 4172138 (E.D. Tenn. Sept. 18, 2012); *see Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion."). Moreover, a review of the medical record demonstrates that substantial evidence supports the ALJ's finding that treatment records indicate that except for occasional exacerbation of leg swelling such as related to a July 2018 car and plane ride, Plaintiff's edema was improved such that she was not having as much swelling or symptoms from venous insufficiency.

A May 26, 2016 treatment note reflects "[n]ormal exam - swelling, edema, and erythema of tissue (trace bilateral ankle edema; no current erythema)", while also indicating that joint swelling was not present. [Tr. 449–50]. A June 16, 2016 treatment note from Plaintiff's cardiologist states that she exhibited normal range of motion and no leg edema [Tr. 428], while a September 12, 2016 treatment note indicated no lower extremity edema [Tr. 578]. Again, a review

16

of Plaintiff's symptoms from an October 20, 2016 treatment note indicates that joint stiffness, joint swelling, muscle pain, and muscle weakness were not present [Tr. 614], while also noting "[n]ormal exam - swelling, edema, and erythema of tissue (trace bilateral ankle edema; no current erythema)... [d]iscomfort in right thoracic back and mid axillary line with movement lying supine on the table and sitting up." [Tr. 616]. Another treatment note of that same date states that Plaintiff "appears to be doing well with [S]alsalate in place of the Nebumetone," that Plaintiff's Hydrocodone prescription was refilled; and that she "is wearing her flats all the time now in place of heels." [Tr. 609]. A February 22, 2017 treatment note states that Plaintiff continues with significant leg pain and swelling, as well as that if she does not have to work on her feet, her swelling is much improved. [Tr. 751]. Similarly, an October 17, 2017 treatment note states that Plaintiff had continued leg pain, "but not as much of the swelling." [*Id.*]. Additionally, a November 22, 2017 progress note indicates no lower extremity edema, clubbing, or cyanosis. [Tr. 715]. Lastly, the Commissioner notes that Dr. Proffitt reported that Plaintiff had full muscle strength in all muscles and normal musculoskeletal findings despite the presence of some leg swelling on March 22, which was described as "not as severe" [Tr. 947, 950], and on July 3, 2018, following a car and plane ride. [Tr. 1019, 1023].[6]

The Court's review of the medical record also demonstrates that the ALJ's finding regarding improvement of Plaintiff's valvular aortic stenosis and coronary artery disease is supported by substantial evidence. Plaintiff's September 12, 2016 follow-up with her cardiologist

---

[6] A summary of Plaintiff's March 22, 2018 treatment record states that Plaintiff "indicates continued leg pain but overall much better since she is on her feet 8 hours a day 5 days a week; still with swelling but not as severe." [Tr. 947]. As depicted by Plaintiff, the Court notes that this treatment note likely was intended to state that Plaintiff's leg pain had improved because she was no longer on her feet eight hours per day, five days per week. *See* [Doc. 13 at 15].

17

stated that she "has been participating in the cardiac rehab program for [the] past 2 months and is doing well," that she denied any exertional chest pain, that her previous symptoms of dyspnea and fatigue had resolved, and that she did not have any palpitations, dizziness, or syncope. [Tr. 572]. Plaintiff also cites to her November 22, 2017 follow-up visit with her cardiologist, as previously discussed, where she reported feeling well and remaining active, demonstrated no exertional chest pain or palpitation, syncope, or presyncope, and it was concluded that Plaintiff was stable by clinical assessment. [Tr. 710, 716]. Lastly, Plaintiff fails to point to evidence in the medical record contrasting the ALJ's finding that her "diabetes has seriously damaged [her] heart, kidneys, or vital organs." [Tr. 21]. While Plaintiff notes, for example, that Dr. Proffitt opined that her diabetes was moderately uncontrolled on October 17, 2017 [Tr. 749], Dr. Proffitt also noted that Plaintiff's blood sugar had been doing better and that her A1c had slightly improved recently [Tr. 750].

Although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). Accordingly, the ALJ adequately provided good reasons for rejecting Dr. Proffitt's opinions, and substantial evidence supports that finding. *Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013) (affirming the ALJ's

18

assignment of less than controlling weight to a treating physician's opinion because the opinion "was contradicted by other evidence in the record demonstrating that Keeler was able to engage in significant physical activities . . . .").

With respect to Dr. Blaine's opinion, the Court finds that a similar analysis applies, as the ALJ found that Dr. Blaine's opinion was not supported by his examination findings and was inconsistent with the medical record. [Tr. 21]. Here, the Court finds that the ALJ properly reviewed Dr. Blaine's opinion, and as the opinion of an examining consultant, was not required to provide good reasons for not affording it controlling weight. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) (holding a consultative examiner's opinion "may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record"); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (explaining that opinions from one-time consultative examiners are not due any special degree of deference); *Hinkle v. Berryhill*, No. 2:17-CV-54, 2018 WL 2437238, at *5 (E.D. Tenn. May 30, 2018) (holding the ALJ properly assigned little weight to a consultative examiner's opinion, as the ALJ detailed how the opinion was not consistent with the examination or medical record, as well as reviewed Plaintiff's subjective allegations). "[T]he ALJ is 'under no special obligation' to provide great detail as to why the opinions of the nonexamining providers 'were more consistent with the overall record' than the examining, but nontreating providers." *Jenkins v. Soc. Sec. Admin.*, No. 3:14-cv-1713, 2017 WL 2692624, at *9 (M.D. Tenn. June 21, 2017) (citing *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012)).

Additionally, the ALJ reviewed Dr. Blaine's opinion, and detailed that Plaintiff had full grip strength was 5/5 bilaterally and that the flexor and extensor strength of both upper and lower extremities was 5/5; that Plaintiff's straight leg raise was negative bilaterally and that her stating,

19

gait, tandem walk, heel and toe walk, and single-leg stand were normal; and that Plaintiff was dyspneic at rest but became mildly dyspneic with exertion. [Tr. 20–21]. Therefore, as the ALJ stated that the opinion was inconsistent with both his examination findings and the medical record, the Court finds that substantial evidence supports the ALJ's rejection of Dr. Blaine's opinion.

Plaintiff's argument centers on the ALJ's acceptance of the opinions of the nonexamining state agency physicians' opinions over those of Dr. Proffitt and Dr. Blaine. Plaintiff contends that "the ALJ's analysis of the opinions of the Agency's non-examining reviewers is also erroneous," as the ALJ failed to "offer any explanation or cite to any specific evidence" to support his finding that their opinions were consistent with the medical record. [Doc. 13 at 17].

"State agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). Therefore, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. "One such circumstance . . . [is] when the 'State agency medical . . . consultant's opinion is based on review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting SSR 96–6p, 1996 WL 374180, at *3).

"[B]efore an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record. In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636

20

F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakely*, 581 F.3d at 409). "[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493–94 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)). The Sixth Circuit has found that an ALJ satisfied *Blakley* by reviewing the medical evidence that was entered after the nonexamining state agency consultant's opinion and explaining why the consultant's opinion was afforded greater weight despite the subsequent evidence. *Id.*

The ALJ's decision reflects that he made an independent determination based on all the medical evidence and that his analysis spanned the entire record; thus, it was appropriate to accept the opinions of the nonexamining state agency consultants. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247–48 (6th Cir. 2016) (affirming ALJ's assessment of great weight to the dated nonexamining state agency consultant's opinion, rather than the current treating physician opinion found to be inconsistent with the record, as "the ALJ's own analysis clearly spanned the entire record—through the final degenerative changes to [Plaintiff's] spine that culminated in a cervical discectomy and fusion, the last medical event included in the record"); *accord Mcwhorter v. Berryhill*, No. 3:14-cv-1658, 2017 WL 1364678, at *12 (M.D. Tenn. Apr. 14, 2017); *Quinlavin v. Comm'r of Soc. Sec.*, No. 15-cv-731, 2017 WL 583722, at *4 (N.D. Ohio Feb. 14, 2017).

Ultimately, an ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence of record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727–28 (6th Cir. 2013). The Court notes that although an ALJ is required to consider every medical opinion in the record, 20 C.F.R. § 404.1527(c), he is not bound to adopt any particular opinion when formulating

21

a claimant's RFC. *See Rudd*, 531 F. App'x at 728 ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'") (quoting SSR 96-5p, 1996 WL 374183 (July 2, 1996)). The ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ). The Court finds that the ALJ appropriately considered the medical opinions of record, and that the ALJ's RFC determination is supported by substantial evidence.

### B. Credibility Assessment

Plaintiff maintains that the ALJ's credibility assessment was deficient because of his failure to acknowledge or discuss Plaintiff's strong work history in his credibility assessment. Plaintiff notes that she "began working in 1980 and taught as a public-school teacher for the Carter County Board of Education" from 1988 "until the onset of disability in 2016," as well as argues that "she successfully continued to educate children (with uninterrupted earning quarters) through multiple physical hardships, including breast cancer with mastectomy and open-heart surgery." [Doc. 13 at 19]. Plaintiff points to cases within the Sixth Circuit finding that a claimant's positive work history may bolster her credibility. [*Id.* at 20].

The ALJ's decision postdates Social Security Ruling 16-3p, which eliminates the use of the term "credibility" from the applicable policy regulation, and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." 2016 WL 1119029, at *1 (Mar. 16, 2016); *see also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564,

22

at *8 (S.D. Ohio Nov. 28, 2017) (noting that under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility"), *report and recommendation adopted by*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018).  However, "[t]he two-step process and the factors ALJs consider when assessing the limiting effects of an individual's symptoms have not changed with the advent of SSR 16-3p." *Holder v. Comm'r of Soc. Sec.*, No. 1:17-CV-00186-SKL, 2018 WL 4101507, at *10 n.5 (E.D. Tenn. Aug. 28, 2018).

The ALJ is still tasked with first determining whether there is an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."  SSR 16-3p, 2016 WL 1119029, at *2–3.  Then, the ALJ is responsible for determining the intensity, persistence, and limiting effects of an individual's symptoms, including assessing their: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  *Id.* at *4–8.

As the Court has already reviewed, in the disability decision, the ALJ found that "the intensity, persistence, and limiting effects of the claimant's symptoms are not consistent with or supported by the evidence of record to the degree alleged."  [Tr. 19]. "Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight."  *Getz v. Comm'r of Soc. Sec.*, No. CV 18-

23

11625, 2019 WL 2710053, at *3–4 (E.D. Mich. June 10, 2019), *report and recommendation adopted by*, 2019 WL 2647260 (E.D. Mich. June 27, 2019) (citing *Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018)).

"It is true that an extensive work history and attempts to continue working despite a disability will generally lend support to a claimant's credibility." *Wohler v. Saul*, No. 1:19-CV-56, 2020 WL 1531296, at *16 (N.D. Ohio Mar. 31, 2020) (citing *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) ("White's extensive work history and attempts to continue working despite his disability support his credibility, a factor not even considered by the ALJ.")).

However, the Sixth Circuit has specifically found that an ALJ is "not required to explicitly discuss [a claimant's] work history when assessing [her] credibility" so long as the ALJ provides substantial justification for his determination of a claimant's subjective symptoms. *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016) (finding "[t]he ALJ was not required to explicitly discuss" the claimant's alleged "consistent and arduous work history when evaluating his credibility" as the ALJ's determination that the claimant's testimony was not fully credible was supported by substantial evidence). "While there is no question that a claimant's positive work history can bolster her credibility, an ALJ is not required to explicitly discuss that work history," but he must consider it along with all the other evidence presented in the record. *Maki v. Comm'r of Soc. Sec.*, No. 1:18-cv-798, 2019 WL 3082309, at *9 (N.D. Ohio July 15, 2019) (citing *Dutkiewicz*, 663 F. App'x at 433).

Plaintiff fails to address the ALJ's additional reasoning for finding that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record. The ALJ noted that Plaintiff's

24

"coronary artery disease has been stable by clinical assessment for over 20 years," that diagnostic studies following her mechanical aortic valve replacement "have shown a mechanical aortic valve with normal function," and that Plaintiff's "treatment record from her cardiologists documents that she continued to feel well, remained normally active and on the go, and could do housework and shopping usually without significant limitation." [Tr. 18–19]. While perhaps it would have been advisable for the ALJ to specifically mention Plaintiff's significant work history, any error by the ALJ in failing to explicitly weigh her work history in the credibility determination is at best harmless error. Therefore, Plaintiff's allegation of error does not constitute a basis for remand.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 12**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 14**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

ENTER:

*Debra C. Poplin*

Debra C. Poplin
United States Magistrate Judge